UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEMOND DUMAS,

              Petitioner,

vs.                              Case No. 3:18-cv-1517-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

              Respondents.

_____

## ORDER

### I.  INTRODUCTION

Petitioner Demond Dumas is challenging his state court (Duval County) conviction for armed burglary with assault through an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 4).  Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 11).  Thereafter, Petitioner filed a Reply (Doc. 13).[1]

_____

[1] Respondents filed an Appendix (Doc. 11).  The Court will refer to the Exhibits in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.  For the Petition, Response and Reply, the Court references the page numbers assigned by the electronic filing system.

## II. EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 2020 WL 5883300 (U.S. Oct. 5. 2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation omitted). In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court can "adequately assess [Petitioner's] claim without further factual

2

development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

### III. PETITION

Petitioner claims he was deprived of the effective assistance of trial counsel resulting in a Sixth Amendment violation and a due process violation under the Fourteenth Amendment. Petition at 3. In support, Petitioner provides the following supporting facts:

> The Petitioner asserts that the Petitioner was denied effective assistance of counsel, where the petitioner['s] counsel who was representing the petitioner at the petitioner['s] hearing on the petitioner['s] motion for new trial failed significantly, where the petitioner['s] counsel brought in no evidence to support or substantiate the grounds in which the petitioner['s] counsel himself filed and knew to be true and were supported by the petitioner['s] trial transcript records, where review of the petitioner['s] trial transcript records were necessary at such hearing in order to substantiate the grounds filed in the petitioner['s] Motion for New Trial, and where the petitioner['s] trial transcript records were available and the petitioner did request the petitioner['s] counsel to also obtain such records.

3

Id.

In sum, Petitioner contends he did not receive a fair and impartial proceeding because his counsel failed to present the trial transcripts to support grounds raised in the motion for new trial. Id. More specifically, Petitioner references three of the seven allegations in the amended motion for new trial (grounds one, four, and six of the amended motion for new trial) that he submits would have been supported by substantial proof through the trial transcript. Id. at 4-11.

Briefly, the record demonstrates the following. Petitioner decided to proceed pro se at trial. Ex. A at 127. The court warned Petitioner that a lawyer may ensure that any errors committed during the trial are properly preserved for appellate review. Id. at 114. The court offered to have the Assistant Public Defender act as stand-by counsel. Id. at 127. Petitioner accepted the offer. Id. The court reminded Petitioner he would still have the entire responsibility for his defense. Id. Petitioner acknowledged the court's warning. Id.

At trial, on December 1, 2011, the court again warned Petitioner that a lawyer may prevent improper argument and aid in the preservation of errors for appeal. Ex. B at 200-201. The court told Petitioner, "[i]t is almost always unwise to represent yourself in court[.]" Id. at 201. Petitioner insisted on

proceeding pro se at trial despite repeated warnings this was a risky proposition.

Petitioner's stand-by counsel for trial, Assistant Public Defender James S. Forrest, was appointed for the purpose of filing a motion for new trial. On January 17, 2012, Mr. Forrest filed a Motion for New Trial. Ex. A at 88-89. On January 30, 2012, he advised the court that Petitioner had provided three pages of case law that he asked counsel to consider in support of the motion. Ex. C at 24. Further, Mr. Forrest told the court that Petitioner wanted counsel to order the transcript of the closing arguments of the prosecutor. Id. Mr. Forrest asked for additional time to obtain the transcript. Id. The court inquired as to whether counsel would need the "JAC's permission to do that?" Id. The prosecutor said Mr. Forrest would not only need permission but there had been no contemporaneous objections made during closing argument; therefore, the appellate court would only review Petitioner's current complaints based on fundamental error. Id. at 24-25. The prosecutor argued it was fiscally irresponsible to order the transcript of the closing argument as there had been no objections by Petitioner. Id. at 25.

Mr. Forrest said he could not comment on that. Id. He then stated that Petitioner wanted a more complete motion filed. Id. The court responded that Mr. Forrest could file a more complete

motion, and there would be a hearing on the motion, and that the parties should get together with a court staff member to schedule a hearing date. <u>Id</u>.

On March 2, 2012, Mr. Forrest filed an Amended Motion for New Trial. Ex. A at 98-100. On March 2, 2012, a hearing was held, and Mr. Forrest explained that he had been appointed as stand-by counsel for trial and was appointed to represent Petitioner for purposes of the motion for new trial. <u>Id</u>. at 133. Mr. Forrest stated that Petitioner was unhappy with counsel's representation because Petitioner wanted to include grounds that counsel found inapplicable to the case. <u>Id</u>. Counsel explained:

> One of the issues that Mr. Dumas has is that initially when we spoke[,] I talked about ordering a transcript of the State's closing arguments. He indicated that he thought that the State's closing arguments were improper; however, he did not make objection to those arguments so therefore they're not issues that are waived. If they are fundamental error, the D.C.A. would take care of those issues.
>
> Your Honor, you sat through the trial and were the presiding judge over the closing arguments and so I believe that there's not a need to have a transcript as to what Mr. Caliel's [Mark Caliel, Assistant State Attorney] closing arguments were, especially since there was no objection made at the time, so I didn't order the transcripts because frankly without the objection it would still be something that the D.C.A. would take up, not Your Honor. So I think Mr. Dumas' arguments are one that there is no transcript as to the closing arguments.

<u>Id</u>. at 134.

Mr. Caliel responded that he concurred, stating there was no need to order any transcripts as the court presided over the closing arguments, and if there had been any actions amounting to fundamental error, the court would have intervened, especially given the circumstances that Petitioner was representing himself at trial.  <u>Id</u>. at 135.  Mr. Caliel stated:

> The State's position is that we do not believe that any of our statements during the course of the closing arguments were improper and none were objected to which makes it even a higher standard to achieve that it must be fundamental error even to be reversable error at that point.

<u>Id</u>.

When Petitioner complained that his counsel was supposed to get with the court reporter to order the transcript, Mr. Forrest responded that, after discussing the matter with his co-workers at the Public Defender's Office, he determined the issue became moot because Petitioner failed to object at closing, and even if counsel were to provide the transcripts to the court, it would be a matter solely for the 1st DCA, and the 1st DCA will be provided with the transcripts on appeal.  <u>Id</u>. at 137-38.  Mr. Forrest said he understood Petitioner's concern, but it could not be rectified by providing the court with transcripts because Petitioner failed to object at trial.  <u>Id</u>. at 138-39.  The court said:

> Mr. Dumas, had ample opportunity to have a counselor and lawyer at trial and he refused. He decided to proceed pro se. I don't know how many times I gave him that chance. I tried to convince him that he needed a lawyer and he decided that he could do it on his own. So he did that. If he's made any errors, that's something that the First District Court of Appeals could deal with.

Id. at 139.

After hearing argument, the court denied the amended motion for new trial. Id. at 156. The court entered a written order denying the amended motion for new trial on March 2, 2012. Id. at 97.

## IV.   HABEAS REVIEW

Petitioner, through his pro se Petition, claims he is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court[,]" Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted), limiting a federal court's authority to award habeas relief. See 28 U.S.C. § 2254; Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Recently, the Eleventh Circuit opined:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

James v. Warden, Holman Correctional Facility, 957 F.3d 1184, 1190 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

The Eleventh Circuit explained the analysis which must take place pursuant to AEDPA:

> A decision is "contrary to" clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case involving materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it. Id. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d 836 (2007).

James, 957 F.3d at 1190-91.

9

A state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)). Thus, this Court may not supersede a trial court's determination simply because reasonable minds may disagree about the finding. Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that

does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's claim of ineffective assistance of counsel is "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020).  In order for a petitioner to prevail on a claim of ineffective assistance of trial counsel, the petitioner must satisfy the two-pronged Strickland test, requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Id. (quotation and citation omitted). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

## VI.   GROUND ONE

Upon review of the state court record, Petitioner exhausted this claim of ineffective assistance of counsel by raising it in his Rule 3.850 motion. Ex. L.  The trial court, referencing the Strickland standard, Ex. L at 66-67, denied this ground, finding that counsel considered ordering the transcripts for submission to

11

the trial court, but after "thoughtful consideration," decided the transcripts were unnecessary.  Id. at 67.  First, and foremost, counsel pointed out that the same judge who presided over the trial was presiding over the motion for new trial proceeding.  Id. Furthermore, counsel noted that as Petitioner appeared pro se at trial, he failed to preserve many of the arguments, and it would be up to the 1st DCA on direct appeal to consider if any fundamental error had occurred.  Id.  Finding counsel's decision both "strategic and reasonable[,]" the court rejected Petitioner's claim of ineffectiveness.

Of import, the court noted that during the three-month span between the jury verdict and the hearing on the amended motion for new trial, the court had been "kept abreast of the case" through various intervening court dates and filings.  Id.  Thus, the court concluded it had maintained its familiarity with the case through its continued interaction in the case post-trial.  Finally, noting the trial court's previous rulings and the affirmance of the judgment of conviction by the First District Court of Appeal (1st DCA),[2] the court determined there was no entitlement to relief, particularly with respect to any challenge to the factual basis and sufficiency of the evidence.  Id. at 67-68.

---

[2] The 1st DCA affirmed the conviction on February 8, 2013.  Ex. G. The mandate issued on February 26, 2013.

Finding counsel provided reasonable professional service in deciding that the transcripts were unnecessary, the trial court denied Petitioner's claim of ineffective assistance of counsel for failure to demonstrate the first prong of the Strickland standard, the performance prong.   Id. at 68.   After assuming *arguendo* counsel was deficient in failing to acquire and provide the transcripts to the court, the court also found Petitioner failed to satisfy the second prong of the Strickland standard, the prejudice prong.   Id.

The court thoroughly analyzed the three sub-claims at issue: (1) firearms and bullet proof vest testimony; (2) judgment of acquittal – State's failure to prove assault; and (3) verdict contrary to the weight of the evidence.   Id. at 68-72.   With respect to the first sub-claim, the court held:

> Contrary to Defendant's allegation, counsel's alleged failure to provide the trial transcripts did not prejudice Defendant. Standby counsel objected to the relevancy of Mr. Hollinsworth's and Detective Sikes's testimony regarding firearms and the bullet-proof vest at trial. (Ex. F at 306-307). The trial court overruled the objection, finding the testimony relevant and admissible because Defendant opened the door to such. (Ex. F at 304-309.) Thus, since the trial court has already denied the claim, there is no reasonable probability the outcome of the proceeding would have been different and Defendant would be granted a new trial. (Ex. F at 308-309.)   Accordingly, Defendant has

13

> failed to establish that he was prejudiced by
> counsel's alleged errors.

Ex. L at 68-69.

The record shows that witness Nikisha Brown described the gun she saw in Petitioner's hand as a big gun.  Ex. B at 218, 225, 230.  On cross-examination, Petitioner asked if Ms. Brown saw Petitioner go to the back of the victim's home "with what you thought to be a dangerous weapon, correct, and/or a firearm?"  Id. at 256.  Ms. Brown responded in the affirmative.  Id.  When asked if she were certain, Ms. Brown reiterated that it was a big gun in Petitioner's hand.  Id.  On re-direct, when asked if there was any doubt that Petitioner had a gun in his hand, Ms. Brown responded there was no doubt.  Id. at 260.

When witness Emily Fulton testified, she said Petitioner burst in with a weapon.  Id. at 267.  She described the gun as real big and black.  Id. at 270.  The prosecutor asked if it appeared to be a real gun, and she responded yes.  Id.  On cross-examination, Petitioner asked if he had entered the house "with what you {Ms. Fulton] thought to be a dangerous weapon and/or a firearm[?]"  Id. at 281.  Petitioner asked the witness if she were scared by virtue of the fact that she had "seen this alleged firearm and/or dangerous weapon[.]"  Id. at 283.  Petitioner asked if it could have been a plastic toy gun, and Ms. Fulton responded

"[r]ight."   Id. at 284.   Petitioner then inquired:   "were you running because of me or y'all thought that I was going to try and hurt one of y'all or just because by virtue of the fact that you seen me with this plastic toy gun?"   Id. at 285.   Ms. Fulton responded that they ran in fear of their lives because they saw Petitioner come into the house with a gun.   Id.   Petitioner asked additional questions about "this gun, plastic toy gun that you suspected to be real[.]"   Id. at 292.

Thereafter, the prosecutor, Mr. Caliel, notified the court that the state intended to call Terry Hollinsworth and Detective Sikes to provide testimony concerning firearms and a bullet-proof vest.   Id. at 304-305.   Stand-by counsel, based on some questions from Petitioner, told the court that he assumed Mr. Caliel is asserting Petitioner opened the door "by talking about a toy gun." Id. at 306.   Mr. Forrest said he thought Mr. Caliel was the first to mention a toy gun, and then Petitioner brought it up "a bunch of times."   Id.

Mr. Forrest asked, on behalf of Petitioner, that the witnesses be excluded as he thought Petitioner did not open the door.   Id. at 307.   Mr. Caliel responded that Petitioner did ask and also stated that he walked into the house with a toy gun and was the first person to interject it.   Id.   Mr. Caliel recollected that he did ask if the witness was sure it was a real gun and the

witness confirmed that she thought it was a real gun.  Id.  The court agreed with the prosecutor's recollection of the testimony and noted that it was Petitioner who attempted to convince the witnesses that it was, in fact, a toy gun, and Petitioner brought the "toy gun" matter up first.  Id. at 308-309.  The record shows Petitioner was the first to ask if the weapon could have been a plastic toy gun.  Id. at 284.  After hearing argument, the court denied the motion to exclude the testimony.  Id. at 309.

As to the failure to provide transcripts so that the trial court's recollection of the trial could be refreshed and the trial court shown that the state failed to prove an assault and thus confirm that the trial court erred in denying the defense's motion for judgment of acquittal, the circuit court found that any failure to provide the trial transcripts did not result in prejudice under Strickland.  Ex. L at 69-70.  Indeed, the court found there was conclusive evidence of guilt based on the evidence presented at trial, including the testimony of two eyewitnesses who testified as to Petitioner's actions and the fear elicited.  Id. at 70.  As such, the court concluded it properly denied the motion for judgment of acquittal and the 1st DCA affirmed the conviction, providing confirmation of the trial court's decision.  Id. Finally, the circuit court found a sufficiency of the evidence argument is more properly raised on direct appeal, and Petitioner

16

was improperly attempting to re-litigate the matter by couching it in terms of a claim of ineffective assistance of counsel. <u>Id</u>. Finding no reasonable probability that the outcome of the proceeding would have been different, the circuit court denied the claim of ineffective assistance of counsel. <u>Id</u>.

Petitioner also argued his counsel was ineffective for failure to provide transcripts to the trial court to show "the proven intent was nothing more than mere speculation," and Ms. Emily Fulton's testimony refuted the state's contention that Petitioner "intentionally and unlawfully threatened to do violence upon any person within the home." <u>Id</u>. at 70. The circuit court decided any failure to provide trial transcripts did not prejudice Petitioner. <u>Id</u>. at 71. The court rested its decision on the fact that the state had produced conclusive evidence of guilt. <u>Id</u>. The court noted that the jury considered Petitioner's testimony in coming to its verdict. <u>Id</u>. Importantly, the circuit court recognized that the court denied the claim of insufficiency of evidence at trial and the 1st DCA affirmed on direct appeal, leading the circuit court to conclude that Petitioner was impermissibly recasting the same issue as a claim for ineffective assistance of counsel. <u>Id</u>. at 71-72. Lastly, the circuit court found Petitioner failed to establish there was a reasonable

probability the outcome of the proceeding would have been different. Id. at 72.

Petitioner appealed the denial of his post-conviction motion. Ex. L at 406. The 1st DCA affirmed per curiam. Ex. N. The mandate issued on June 4, 2018. Ex. O.

The circuit court properly utilized the Strickland two-pronged standard when addressing the claim of ineffective assistance of trial counsel. The court found there was no deficient performance by counsel, and even assuming there had been, there was no prejudice as evidenced by its other rulings, record support, and the ruling of the 1st DCA on direct appeal. The 1st DCA affirmed the denial of the Rule 3.850 motion. As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief.

This Court finds the state court's decision is entitled to AEDPA deference as it is not inconsistent with Supreme Court precedent, the adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Giving AEDPA deference, this Petitioner is not entitled to habeas relief.

Upon review of the record, counsel's performance fell well within the broad range of reasonable assistance under prevailing

professional norms.   Counsel is given wide latitude in making strategic decisions, and in this instance, counsel's performance did not fall outside the norm.   The decision not to obtain the trial transcripts to present to the trial court to support a motion to dismiss was not so patently unreasonable that no competent attorney would have made that decision, particularly in a case where the judge reviewing the motion for new trial is the same judge that sat through the trial and handled post-trial matters. Indeed, the court noted it had kept abreast of the case through post-verdict filings and court dates, signifying the court had not forgotten Petitioner, the state's case, or the evidence presented to convict Petitioner.   Finally, finding adequate support for the decision not to obtain the trial transcripts, the court noted that Petitioner failed to preserve many of the arguments as he proceeded pro se at trial, and thus counsel decided it would really be up to the 1st DCA to look for any fundamental error without preservation of error at trial.

Here, the representation by counsel was not so filled with serious errors that counsel was not functioning as counsel guaranteed by the Sixth Amendment.   Counsel attended the trial as stand-by counsel and was very familiar with the case.   Ex. B at 2, 195.   Counsel performed reasonably in representing Petitioner on the amended motion for new trial.   Brewster, 913 F.3d at 1056.

Not only has Petitioner failed to show deficient performance, he has failed to show resulting prejudice.  As previously noted, there is no reasonable probability that the outcome of the case would have been different if counsel had provided transcripts to support his amended motion for new trial.  In sum, the resolution of the <u>Strickland</u> analysis was proper, and Petitioner is not entitled to habeas relief.

In conclusion, the Court finds the state court's determination is consistent with federal precedent.  Here, AEDPA deference is warranted.  The state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.  Thus, the Petition is due to be denied.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition for Writ of Habeas Corpus (Doc. 4) is **DENIED.**

2.   This action is **DISMISSED WITH PREJUDICE.**

3.   The **Clerk** shall enter judgment accordingly and close this case.

4.   If Petitioner appeals the denial of his Amended Petition for Writ of Habeas Corpus (Doc. 4), **the Court denies a certificate**

**of appealability.**[3]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 9th day of October, 2020.

_____

BRIAN J. DAVIS
United States District Judge

sa 10/7
c:
Demond Dumas
Counsel of Record

---

[3] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.